**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**ANDREW K.,**

**Plaintiff,**

**vs.** **CIVIL ACTION NO. 2:26-CV-00182**

**FRANK BISIGNANO,**
*Commissioner Of Social Security*,

**Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Order entered March 10, 2026 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in Support of Complaint (ECF No. 7) and the Defendant's (hereinafter "Commissioner") Brief in Support of Defendant's Decision (ECF No. 8).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 7), **GRANT** the Commissioner's request to affirm the final decision (ECF No. 8); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed his application for SSI on August 4, 2026 alleging disability beginning July 29, 2001 due to PTSD from childhood trauma, severe anxiety, anger issues, and possible schizophrenia. (Tr. at 10, 188, 192)[1] His claim was denied at the initial and reconsideration levels of review (Tr. at 10, 52-59, 61-68). Thereafter, he filed a written request for hearing (Tr. at 87).

An administrative hearing was held on May 1, 2025 before the Honorable Francine Serafin, Administrative Law Judge ("ALJ") (Tr. at 33-51). On June 25, 2025, the ALJ entered an unfavorable decision (Tr. at 7-25). On July 14, 2025, the Plaintiff sought review by the Appeals Council of the ALJ's decision (Tr. at 167-169). The ALJ's decision became the final decision of the Commissioner on January 15, 2026 when the Appeals Council denied the Plaintiff's Request for Review (Tr. at 1-6).

On March 9, 2026, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 6) Subsequently, the Plaintiff filed his Brief (ECF No. 7), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 8), and finally, the Plaintiff filed his Reply Brief reiterating his arguments in support of remand (ECF No. 9). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 32 years old when he filed his application for SSI, therefore considered a "younger person" during the underlying proceedings. See 20 C.F.R. § 416.963(c). (Tr. at 20) He has at least a high school education, but no past relevant work. (Id.)

[1] The Plaintiff indicates that he stopped working due to his conditions on December 31, 2021 (Tr. at 192).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job,

and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 416.920a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.
>
> (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ found the Plaintiff has not engaged in substantial gainful activity since the application date of August 4, 2023. (Tr. at 12, Finding No. 1) Under the second inquiry, the ALJ found that the Plaintiff suffers from the following severe impairments: bipolar

disorder; generalized anxiety disorder; panic disorder; post-traumatic stress disorder; disassociate identity disorder; gender identity disorder; and schizoaffective disorder. (Id., Finding No. 2) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 13, Finding No. 3)

The ALJ then found that the Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> He would be capable of performing simple work tasks that are not at an assembly line or production rate pace or involving any strict production quotas. He should be capable of tolerating occasional interaction with supervisors, coworkers, or the general public. He would be capable of making occasional simple work-related decisions and would be capable of managing occasional changes in the work routine or work setting.

(Tr. at 16, Finding No. 4)

At step four, the ALJ found that the Plaintiff has no past relevant work. (Tr. at 20, Finding No. 5) However, at step five, in addition to the non-issue of the transferability of job skills, the ALJ found that based on the Plaintiff's age, education, lack of work experience and RFC, the Plaintiff is capable of performing other jobs in the national economy. (Id., Finding Nos. 6-9) Finally, the ALJ determined the Plaintiff has not been under a disability since August 4, 2023. (Tr. at 21, Finding No. 10)

**Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff asserts three grounds of error with the ALJ's decision: first, the ALJ failed to evaluate the medical opinion provided by William C. Steinhoff, Jr., M.A., consultative psychologist (ECF No. 7 at 2-4); second, the ALJ made inconsistent findings as to the Plaintiff's

ability to perform the physical demands of work (Id. at 4-5); and third, the ALJ's rejection of the Plaintiff's mental RFC to one to two step instructions by persuasive medical opinions of record for being not "vocationally defined" is contrary to SSA policy and controlling jurisprudence (Id. at 5-7). Because of these errors, the final decision is not supported by substantial evidence and the Plaintiff asks the Court to remand this matter. (Id. at 8)

In response, the Commissioner contends that the ALJ sufficiently evaluated Mr. Steinhoff's consultative report, and discussed this evidence throughout the second and third steps of the sequential evaluation process, including in the RFC assessment, additionally, contrary to the Plaintiff's assertion that this report constituted a medical opinion, the Commissioner states that the regulations provide that this report is not – and therefore, the ALJ was under no duty to evaluate it (ECF No. 8 at 6-9). Further, the RFC assessment is an administrative finding, not a medical one, and reserved entirely to the ALJ and is not beholden to any medical opinion or statement or findings (Id. at 6, 9). The Commissioner also notes that the ALJ explained what portions of the medical opinion evidence were persuasive or less persuasive when assessing the Plaintiff's mental RFC, and notwithstanding the ALJ's statement that one to two step tasks was not vocationally defined, the ALJ explained what evidence supported her conclusions, enjoying the support of substantial evidence (Id. at 9-12). Additionally, the Commissioner argues that the Plaintiff fails to demonstrate any prejudice stemming from the ALJ's conclusion (Id. at 13). Finally, when reading the decision as a whole, there is no confusion that the ALJ determined the Plaintiff could perform work at all exertional levels, and therefore the errant inclusion of the sentence in the decision regarding light work is mere scrivener's error that does not warrant remand (Id. at 13-14). The Commissioner argues that the final decision is supported by substantial evidence and should be

affirmed. (Id. at 14)

In his reply brief, the Plaintiff reasserts his argument that this matter should be remanded because Mr. Steinhoff's report was a medical opinion that was entitled to be considered and evaluated by the ALJ; that the two completely different findings as to the Plaintiff's physical RFC is not mere scrivener's error, as they at least cause serious ambiguity and inconsistency; and that the ALJ's invalid reason for rejecting the one to two step instructions endorsed by generally persuasive State agency opinions warrants remand because the ALJ did not explain why this portion of the opinions were not adopted into the mental RFC (ECF No. 9).

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

Medical Opinion Evidence and Relevant Medical Evidence:

In the written decision, the ALJ mentioned the January 2024 mental status examination report provided by Mr. William Steinhoff, Jr., M.A., at the second step of the sequential evaluation process, noting that the medical record did not support a medically determinable impairment of substance abuse disorder. (Tr. at 12-13, citing Exhibits 1F – 7F)[3] At step three, the ALJ discussed the evidence of record in her analysis of the Plaintiff's limitations in the four broad areas of mental functioning, determining that he exhibited moderate limitations in each area, again, referencing the medical records including the findings outlined in Mr. Steinhoff's report. (Tr. at 13-15) During

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. There is no dispute concerning the Plaintiff's impairments or the medical records, accordingly, the undersigned does not belabor summarizing same herein.

[3] Exhibit 1F is the mental status examination report (Tr. at 280-285).

the discussion of the evidence in support of the Plaintiff's RFC assessment, the ALJ repeatedly referenced the record of evidence, including Mr. Steinhoff's report. (Tr. at 17-19)

As for the opinion evidence and prior administrative medical findings, the ALJ noted that the State agency psychological consultants completed mental RFC assessments on the Plaintiff in January 2024 and November 2024, and observed their opined restrictions: that the Plaintiff has moderate limitations in all four broad areas of mental functioning; that the Plaintiff retains the ability to "operate in a work-like environment that is limited to routine and repetitive one to two step (simple) instructions and tasks and that such a setting should require little interaction with co-workers, supervisors, or the general public and impose only minimal production quotas as well as few independent decision-making responsibilities." (Tr. at 19, 52-59, 61-68) The ALJ noted that the State agency psychological consultants supported their opinions with "explanatory comments that include references to symptoms related to the claimant's mental impairments[]" and were "generally consistent" with the Plaintiff's medical records. (Tr. at 19) However, the ALJ "notes that the language regarding one to two step instructions and tasks, little interaction with co-workers, supervisors, or the general public, and minimal production quotas is not vocationally defined and does not adequately articulate the limitations for use in a [RFC] assessment." (Id.) Therefore, the ALJ found the opinions persuasive to the extent they indicate the Plaintiff has limitations in all four broad areas of mental functioning. (Id.)

**The Administrative Hearing:**

Plaintiff's Testimony:

The Plaintiff stated that the primary issue he had been working on with his therapist was his generalized anxiety disorder, schizoaffective disorder, agoraphobia, gender identity disorder,

his "bad PTSD", and dissociative identity disorder. (Tr. at 39) He endorsed experiencing delusions or hallucinations daily, and to cope, he hides and secludes himself upstairs under a blanket for hours. (Tr. at 39-40) The Plaintiff has a girlfriend, and is the main person who helps him and with whom he is close. (Tr. at 40) However, sometimes the Plaintiff is unable to communicate with her, and he "shut[s] down a lot" and "end[s] up in a ball." (Id.) The Plaintiff has difficulties interacting with strangers, which causes him "massive anxiety attacks and blowups" and sometimes, he experiences IBS to the point of having accidents. (Tr. at 41) He is most comfortable being alone with his girlfriend. (Id.) While the Plaintiff has visits with his therapist and goes to the grocery store, he still experiences fear of leaving his home, where he is almost in tears. (Tr. at 41-42) He will often take his pet cat with him on these trips. (Tr. at 42)

The Plaintiff testified to having an oral fixation, and is unable to keep his fingers out of his mouth; he has paranoia and will "hit the floor and lock up." (Id.)

The Plaintiff's girlfriend has to remind him to attend to his hygiene, like taking showers, and brushing his teeth. (Tr. at 42-43) The Plaintiff stated that he would be unable to take care of himself for 48 hours without anyone helping him, that he would still need reminders to make sure that he is eating or drinking. (Tr. at 43) He can make himself simple meals, like noodles. (Id.)

The Plaintiff estimated that it had been at least two years since he left the house on his own for more than four hours. (Id.) He does not sleep very well, and the medicine he takes will sometimes "knock" him out. (Id.)

For hobbies, the Plaintiff enjoys playing with his dolls, but he switches to other activities frequently due to losing interest after five or ten minutes. (Tr. at 44)

Vocational Expert Testimony:

In response to the ALJ's hypothetical questions, the vocational expert testified that such a person with the Plaintiff's vocational and educational profile, with the controlling RFC, but at the medium and light levels of physical exertion, would be capable of performing other jobs in the national economy, including: kitchen helper and material handler, both entry level, SVP 2 medium jobs; and price marker, entry level simple work, SVP 2, at light exertion. (Tr. at 46-47) In response to questioning by the Plaintiff's representative, the vocational expert also testified that if the hypothetical individual is limited to having "no contact" with co-workers, supervisors, and the general public, then the individual could not work on a full time competitive basis. (Tr. at 49) Further, should the individual require occasional redirection from supervisors and managers throughout the workday, as in up to a third of the workday, the individual could not work on a full time competitive basis. (Tr. at 49-50)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape

their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

Evaluation of Opinion Evidence:

As noted *supra*, the Plaintiff argued that the ALJ failed to mention Mr. Steinhoff's examination and to evaluate it. While the ALJ did not mention Mr. Steinhoff by name, there is no question that she discussed the findings contained in the report. (See, e.g., Tr. at 13, 280-285; "He reported to a consultative psychologist that he rarely goes to stores or runs errands due to anxiousness and being fearful of crowds (Exhibit 1F)." Moreover, despite the Plaintiff's argument otherwise, Mr. Steinhoff's mental status examination report is not a "medical opinion" as defined under the regulations. See 20 C.F.R. § 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed" that describe the physical, mental, or other demands of work activity under this subsection.) While Mr. Steinhoff did describe the Plaintiff's limitations in the four broad areas of mental functioning, he only opined that the Plaintiff remains capable of handling his own benefits, should they be awarded – the consultative psychologist did not render an opinion as to what the Plaintiff can still do despite his impairments. Thus, to that extent, the ALJ was under no obligation to "evaluate" this report, as it did not constitute an opinion as defined under the regulations. In sum, the undersigned finds the Plaintiff's arguments that the ALJ failed to mention Mr. Steinhoff's mental status examination report or to evaluate it as an "opinion" lack merit.

No Inconsistent Physical RFC Findings:

With respect to the Plaintiff's argument that the ALJ made inconsistent findings in the Plaintiff's physical RFC, the undersigned also finds this argument lacks merit. There is no dispute that the ALJ found that the Plaintiff had no physical exertion restrictions, and none have been raised by the parties otherwise. While the ALJ did find the Plaintiff remains capable of performing the full range of work at all exertional levels (See Tr. at 16, Finding No. 4) – an uncontested finding – the ALJ did ask the vocational expert to provide "examples" of other work at the medium and light levels that the Plaintiff could still perform notwithstanding his non-exertional limitations. (Tr. at 47) Only at *one* point in the written decision did the ALJ mention that she "has accommodated some degree of the claimant's symptoms related to the claimant's severe physical impairments in his residual functional capacity by limiting the claimant to a range of work at the light exertional level that includes postural and environmental limitations." (Tr. at 19) In the sentence that immediately follows, the ALJ states, "Additionally, to accommodate some degree of the claimant's symptoms related to the claimant's mental impairments, the undersigned has limited the claimant to jobs that entail limitations of performing simple work tasks that are not at an assembly line or production rate pace or involving any strict production quotas, tolerating occasional interaction with supervisors, coworkers, or the general public, making occasional simple work related decisions, and managing occasional changes in the work routine or work setting." (Tr. at 19-20) Then the ALJ states that the Plaintiff's "ability to perform work at *all exertional levels* has been compromised by nonexertional limitations . . . the vocational expert testified that . . . the individual would be able to perform the requirements of . . . a kitchen helper . . . material handler . . . and price marker." (Tr. at 20) (*emphasis* added) Even from a cursory review of the ALJ's overall decision, but also in consideration of the underlying record at large, shows that this errant sentence

concerning the Plaintiff's "severe physical impairments" is a scrivener's error. There is no physical restriction that limits the Plaintiff's RFC, and the Plaintiff alleged no such limitations in his application for benefits. The ALJ's conclusions are not inconsistent, ambiguous, or even confusing – while the Plaintiff has some nonexertional restrictions in his RFC that are supported by the record of evidence, there are none supporting any physical restrictions. In short, the undersigned agrees with the Commissioner that this typographical error does not warrant remand[4], as the ALJ's findings are unambiguous and survive judicial review. See Keene v. Berryhill, 732 Fed.Appx. 174, 177 (4th Cir. 2018) (finding the court "must read the ALJ's decision as a whole" and that findings in a step can support findings in other steps of the analysis).

Omission of One to Two Step Instructions Limitations:

As mentioned earlier, the Plaintiff challenges the ALJ's evaluation of the State agency psychologists' opinion evidence to the extent that while she found them to be generally persuasive, her basis for discounting the "one to two step instructions and tasks" was improper, since the phrase enjoys support from the Agency's own regulations. Additionally, the Plaintiff argues that the ALJ was obligated to explain why this particular limitation was not adopted into the RFC determination, however, her reasoning to reject the limitation as "not vocationally defined" (Tr. at 19) is invalid, and warrants remand. To be clear, the pertinent part of the ALJ's evaluation of the State agency opinions is as follows:

> [T]he undersigned notes that the language regarding one to two step instructions and tasks, little interaction with co-workers, supervisors, or the general public, and minimal production quotas is not vocationally defined and does not adequately articulate the limitations for use in a residual functional capacity assessment. Thus, the undersigned generally finds the opinions of the State agency psychological consultants persuasive to the extent they indicate the claimant has limitations pertaining to understanding, remembering, and applying information; interacting

[4] See Quaite v. Barnhart, 312 F.Supp.2d 1195, 1199 (E.D. Mo. Mar. 25, 2004) ("a mere typographical error . . . does not warrant reversal"). (ECF No. 8 at 13)

> with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself.
>
> * * *
>
> [T]o accommodate some degree of the claimant's symptoms related to the claimant's mental impairments, the undersigned has limited the claimant to jobs that entail limitations of performing simple work tasks that are not at an assembly line or production rate pace or involving any strict production quotas, tolerating occasional interaction with supervisors, coworkers, or the general public, making occasional simple work related decisions, and managing occasional changes in the work routine or work setting.

(Tr. at 19-20) The foregoing does not demonstrate that the ALJ *only* noted the "one to two step instructions and tasks" to be lacking definition in any vocational sense – but rather, the entirety of the State agency psychological consultants' opined restrictions – including the "little" interaction with others and "minimal" production quotas. At most, this appears to be the ALJ's preference for certain phrasing of vocational terms in order to translate the opined restrictions into a workable RFC assessment. To that extent, the undersigned does not agree with the Plaintiff that the ALJ solely discounted the State agency opinions with respect to the "one to two step instructions and tasks" or that she failed to adequately explain why this limitation was omitted from the RFC and thus jeopardizing judicial review.

In any event, it is known that the RFC assessment lies squarely with the ALJ, and not with any medical provider/examiner. 20 C.F.R. § 416.946(c); see <u>Felton-Miller v. Astrue</u>, 459 Fed.Appx. 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). As noted *supra*, a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2).

The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at § 416.913(a)(5).

Moreover, an ALJ need not use any "particular language or adhere to any particular format" in the written decision. See Todd A. v. Kijakazi, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021). To be sure, the ALJ's decision must build an accurate and "logical bridge between the evidence and the ALJ's conclusion that [a medical] opinion," Oakes v. Kijakazi, 70 F.4th 207, 214 (4th Cir. 2023), is or is not "persuasive" evidence of a claimant's allegedly disabling medical condition. Id. at 212–213. When the court is " 'left to guess' as to how the ALJ reached her evaluation of the conflicting medical opinions in light of the evidence of record," then it cannot "review the reasonableness of her conclusions." Testamark v. Berryhill, 736 Fed Appx. 395, 398 (4th Cir. 2018).

In this case, the ALJ properly applied Section 416.920c, which emphasizes the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; moreover, an adjudicator is not bound to give any specific weight or deference to any medical provider's opinion, including those provided by treating sources. Id. § 416.920c(a). (Tr. at 16, 19) Instead of assigning weight to medical opinions, the ALJ just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. § 416.920c(b)(2). When discussing the finding about whether an opinion is persuasive, the ALJ need only explain how she considered "the most important factors" of supportability and consistency. Id. § 416.920c(c). The

ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. § 416.920c(b)(2)-(3).

The parties agree the jobs identified by the vocational expert and adopted by the ALJ were consistent with the RFC. (see ECF No. 9 at 6) Thus, it is of interest here to note that for the kitchen helper and price marker[5] jobs, the Dictionary of Occupational Titles provides that these jobs require a reasoning level of 2, defined as follows: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." See DICOT 318.687-010 (G.P.O.), 1991 WL 672755; see DICOT 209.587-034 (G.P.O.), 1991 WL 671802. For the material handler position, entitled "Battery Stacker" under the Dictionary of Occupational Titles, it requires a reasoning level of 1[6], which provides: "Apply commonsense understanding *to carry out simple one- or two-step instructions*. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." See DICOT 727.687-030 (G.P.O.), 1991 WL 679666 (*emphasis* added). The foregoing clearly shows that contrary to the Plaintiff's contention otherwise (see ECF No. 9 at 6), the ALJ's conclusion that the Plaintiff remains capable of performing the job requirements of the "material handler" position *is consistent* with the "one to two step instructions and tasks" proffered by the State agency psychological consultants. To that extent, the undersigned finds that the Plaintiff's argument that the ALJ rejected the one to two step instructions and tasks for specious reasons and failed to incorporate them into the RFC lacks merit. Additionally, to the extent the Plaintiff argues the ALJ should have further explained why she did

[5] The Dictionary of Occupational Titles also describes this job as simply "Marker".

[6] In the written decision, the undersigned observes that this job is described as being a medium exertional level, unskilled SVP2. (Tr. at 20)

not give full credit or why she discounted some of the State agency psychological consultants' opined restrictions, while an ALJ is not required to discuss all the evidence submitted, or does not cite specific evidence, this does not mean the evidence was not considered. See Manigo v. Colvin, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015). To reiterate, "there is no particular language or format that an ALJ must use in [her] . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's determination is sufficient if it "not only sets forth the facts used in rendering [her] decision, but it also provides a thorough examination of the medical evidence." Id. Again, it is important that an ALJ's decision must be read as a whole in order to discern whether substantial evidence supports a finding. See Keene v. Berryhill, 732 Fed.Appx. 174, 177 (4th Cir. 2018) (finding the court "must read the ALJ's decision as a whole" and that findings in a step can support findings in other steps of the analysis).

In this case, the ALJ complied with the pertinent regulations and provided an adequate explanation for her evaluation of the opinion evidence. "Meaningful review is frustrated – and remand necessary – only where [the court is] 'unable to fathom the [ALJ's] rationale in relation to evidence in the record.' " Britt v. Saul, 860 Fed.Appx. 256, 262 (4th Cir. 2021) (citation omitted). The foregoing analysis of the evidence of record provides a reasonable explanation for the ALJ's evaluation of the State agency psychological consultants' opinions – in short, this Court is capable of fathoming the ALJ's rationale for finding them generally persuasive, and further, the ALJ's incorporation of the opined restrictions into the resulting RFC is supported by substantial evidence.

To the extent that the opinion was not corroborated by the evidence of record, the ALJ was

under no obligation to include those restrictions in the hypothetical to the vocational expert. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that an ALJ's hypothetical question need only include those impairments supported by the record); Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (unpublished table opinion) (stating that an ALJ has "great latitude in posing hypothetical questions" and need only include limitations supported by substantial evidence in the record).

Accordingly, the undersigned **FINDS** that the final decision denying the Plaintiff's application for benefits is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request for remand (ECF No. 7), **GRANT** the Commissioner's request to affirm (ECF No. 8), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: July 17, 2026.

Omar J. Aboulhosn
United States Magistrate Judge